UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

SHAW-NAE DIXON, THOMAS CASATELLI, JEANETTE RIVERA, NATALIA YUKUBOVA, CHRIS KING, ALISON MARCHESE, on behalf of AM, JM, and MMV (her minor children), WILLIAM MORRIS, GEORGE KABBEZ, MARY JOSEPHINE GENEROSO, SHAW NAE'S HOUSE, LLC, SALTY DOG RESTAURANT, LTD, PER TAVERN CORP. d/b/a THE KETTLE BLACK, CARGOSTORK PARTIES INC. d/b/a DO ME A FAVOR, and INDEPENDENT RESTAURANT OWNERS ASSOCIATION RESCUE, INC.,

                                         Plaintiffs,

21-cv-5090 (BMC)

-against-

BILL DE BLASIO, in his official capacity as Mayor of New York City; and THE CITY OF NEW YORK,

                                         Defendants.

-----------------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER FOR A PRELIMINARY INJUNCTION

GEORGIA M. PESTANA
Corporation Counsel of the
   City of New York
Attorney for Defendants
100 Church Street
New York, New York 10007

SHERYL NEUFELD
MICHELLE GOLDBERG-CAHN
KERRI A. DEVINE
JASMINE PAUL
      Of Counsel.

October 5, 2021

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. iv

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF MATERIAL FACTS ........................................................... 2

    COVID-19 Background ................................................................................ 2

    COVID-19 Vaccination ............................................................................... 2

    The Key to NYC Program .......................................................................... 4

LEGAL STANDARD ....................................................................................... 6

ARGUMENT

        POINT I

            PLAINTIFFS' CLAIMS ARE NOT LIKELY TO
            SUCCEED ON THE MERITS .................................................. 6

            A.  The Standard Set Forth in Jacobson v.
                Massachusetts Applies. ........................................................... 6

            B.  Plaintiffs' Equal Protection Claims are Not
                Likely to Succeed on the Merits .............................................. 8

                1.  The Key to NYC Program Does Not
                    Discriminate Based on Race .......................................... 8

                2.  The Key to NYC Program is Subject to and
                    Satisfies Rational Basis Review .................................... 9

                3.  Plaintiffs fail to identify sufficient
                    comparators ................................................................. 11

            C.  Plaintiffs' Substantive Due Process Claims are
                 Unlikely to Succeed on the Merits ........................................... 12

                1.  Religious Exemptions .................................................. 13

**Page**

   2. Bodily Integrity .........................................................................14

   3. Parental Rights .........................................................................15

   4. Right to Hold Specific Private Employment
    and Follow a Chosen Profession. .................................................16

  D. Plaintiffs' Freedom of Association Claim is
   Not Likely to Succeed on the Merits. ...............................................17

  E. Plaintiffs' Indentured Servitude Claim is Not
   Likely to Succeed .........................................................................18

  F. Plaintiffs' Takings Claim is Not Likely to
   Succeed .........................................................................20

    i. Economic Impact of the Key to NYC
     Program .........................................................................20

    ii. Plaintiffs Fail to Plead that the Key to
     NYC Program Interferes with their
     Investment-Backed Expectations ...........................................21

    iii. The Character of the Governmental
     Action .........................................................................21

  G. Plaintiffs' Claim that the Mayor Lacks
   Authority to Issue the Emergency Orders Fails
   is Not Likely to Succeed ..................................................................22

  H. Plaintiffs' Privileges and Immunities Claim
   Fails as a Matter of Law ..................................................................24

POINT II

  PLAINTIFFS CANNOT DEMONSTRATE
  IRREPARABLE HARm .....................................................................25

POINT III

  THE BALANCE TO HARDSHIPS TIPS IN THE
  DEFENDANTS' FAVOR ..................................................................26

**Page**

CONCLUSION.................................................................................................................. 27

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                             <u>**Pages**</u>

<u>In Re Abbott</u>,
    954 F. 3d 772 (5th Cir Apr. 7, 2020) ......................................................7

<u>Abney v. Campbell</u>,
    206 F.2d 836 (5th Cir. 1953) ..............................................................19

<u>Ass's of Jewish Camp Operators v. Cuomo</u>,
    2020 U.S. Dist. LEXIS 117765 (N.D.N.Y. July 6, 2020)..................................7, 26

<u>Aviles v. De Blasio</u>,
    2021 U.S. Dist. Lexis 38930 (S.D.N.Y March 2, 2021)........................................15

<u>Bery v. City of New York</u>,
    97 F.3d 689 (2d Cir. 1996),
    <u>cert.</u> denied, 520 U.S. 1251 (1997) ......................................................6

<u>Boone v. Boozman</u>,
    217 F. Supp. 2d 938 (E.D. Ark. 2002)......................................................16

<u>Buffalo Teachers Fed'n v. Tobe</u>,
    464 F.3d 362 (2006).....................................................................20, 21

<u>Butler v. Perry</u>,
    240 U.S. 328 (1916)........................................................................19

<u>C.F. v. New York City Dept. of Health & Mental Hygiene</u>,
    191 A.D.3d 52 (2d Dep't 2020) ............................................................13

<u>Castillo v. Whitmer</u>,
    823 Fed. Appx 413 (6th Cir. 2020) ........................................................9

<u>Catanzaro v. Weiden</u>,
    188 F.3d 56 (2d Cir. 1999)...............................................................23, 24

<u>Caviezel v. Great Neck Pub. Schs.</u>,
    500 Fed. Appx. 166 (2d Cir. 2012) ................................................ 12-13, 16

<u>Cent. Rabbinical Cong. of the United States v. NYC Dep't of Health & Mental
    Hygiene</u>,
    763 F.3d 183 (2d. Cir. 2014)................................................................6

<u>City of Cleburne v. Cleburne Living Ctr.</u>,
    473 U.S. 432 (1985).......................................................................10

**Cases**                                                                                                     **Pages**

Coachella Valley Hosp. Unites v. Newsom,
    2021 U.S. Dist. LEXIS 134314 (C.D. Ca. July 13, 2021) ......................................................18

Columbus Ale House, Inc. v. Cuomo,
    2020 U.S. Dist. LEXIS 191828 (E.D.N.Y. Oct. 15, 2020)............................................7, 16, 26

Concerned Home Care Providers, Inc. v. Cuomo,
    783 F.3d 77 (2d Cir. 2015)................................................................................................10

Congregation Rabbinical College of Tartikov, Inc. v. Vill. of Pomona,
    915 F. Supp. 2d 574 (S.D.N.Y. 2013)..............................................................................8

Connolly v. Pension Ben. Guar. Corp.,
    475 U.S. 211 (1986)..........................................................................................................21

County of Sacramento v. Lewis,
    523 U.S. 833 (1998).........................................................................................................15

Dallas v. Stanglin,
    490 U.S. 19 (1989)...........................................................................................................18

Doe v. Zucker,
    2021 U.S. Dist. LEXIS 28937 (N.D.N.Y. Feb. 17, 2021) ................................................. 15-16

Elmsford Apt. Assocs., LLC v. Cuomo,
    469 F. Supp. 3d 148 .......................................................................................................20

FCC v. Beach Communications, Inc.,
    508 U.S. 307 (1993).........................................................................................................10

Fifth Ave. Presbyterian Church v. City of New York,
    293 F.3d 570 (2d Cir. 2002)............................................................................................13

Giozza v. Tiernan,
    148 U.S. 657 (1893).........................................................................................................24

Givens v. Newsom,
    459 F. Supp. 3d 1302 (E.D.C.A. 2020)...........................................................................17

H's Bar, LLC v. Berg,
    2020 U. S. Dist. LEXIS 218371 (S.D. Ill. Nov. 21, 2020) ......................................................7

Hartman v. Acton,
    2020 U.S. Dist. LEXIS 72068 (S.D. Ohio Apr. 21, 2020) ......................................................12

**Cases**                                                                **Pages**

Hayden v. County of Nassau,
   180 F.3d 42 (2d Cir. 1999)...............................................................................8

Heller v. Doe,
   509 U.S 312 (1993)...........................................................................................10

Hodel v. Indiana,
   452 U.S. 314 ....................................................................................................10

Hopkins Hawley LLC v. Cuomo,
   2021 U.S. Dist. LEXIS 24580 (S.D.N.Y. Feb. 9, 2021)...................................7, 12, 15, 18, 26

Hu v. City of New York,
   927 F.3d 81 (2d Cir. 2019)...............................................................................16

Hurd v. Fredenburgh,
   984 F.3d 1075 (2d Cir. 2021)...........................................................................13

Hurtado v. United States,
   410 U.S. 578 (1973).........................................................................................19

Immediato v. Rye Neck Sch. Dist.,
   73 F.3d 454 (2d Cir. 1996)...............................................................................15

Jacobson v. Massachusetts,
   197 U.S. 11, 25 S. Ct. 358 (1905)...................................................................6, 7, 8, 12

Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth
   Dep'ts,
   852 F.3d 178 (2d Cir. 2017)...........................................................................17

Johnson v. Newburgh Enlarged School District,
   239 F.3d 246 (2d Cir. 2001)...........................................................................15

JWJ Indus., Inc., v. Oswego Cty.,
   538 F. App'x 11 (2d Cir. 2013) ......................................................................17

Kabrovski v. City of Rochester,
   149 F. Supp. 3d 412 (W.D.N.Y. 2015) ...........................................................21

Klaasen v. Trs. Of Ind. Univ.,
   2021 U.S. Dist. LEXIS 133300
   (N.D. Indiana, South Bend Div. July 18, 2021)...............................................7, 13

**Cases**                                                                                                          **Pages**

League of Indep. Fitness Facilities & Trainers v. Whitmer,
    2020 U.S. Dist. LEXIS 110884
    (W.D. MI. June 19, 2020) ....................................................................................7, 26

Leb. Valley Auto Racing Corp. v. Cuomo,
    478 F. Supp. 3d 389 (N.D.N.Y. 2020) .................................................................21

Lewis v Thompson,
    252 F3d 567 (2d Cir 2001).................................................................................10

Logan v. Zimmerman Brush Co.,
    455 U.S. 422 ....................................................................................................12

Lombardi v. Whitman
    485 F. 3d 73 (2d Cir. 2007)................................................................................15

Luke's Catering Serv., LLC v. Cuomo,
    485 F. Supp. 3d 369 (W.D.N.Y. 2020) ...........................................................22, 26

Maniscalco v. New York City Dep't of Educ.,
    2021 U.S. Dist. LEXIS 184971 (E.D.N.Y. Sept. 23, 2021)........................7, 11, 13, 15, 16, 26

McCarthy v. Cuomo,
    2020 U.S. Dist. LEXIS 107195 (E.D.N.Y. June 18, 2020) ......................................7

Murphy v. Lamont,
    2020 U.S. Dist. LEXIS 136961 (D. Conn. Aug. 3, 2020) ...............................26-27

Murr v. Wisconsin,
    137 S. Ct. 1933 (2017).......................................................................................20

New York City C.L.A.S.H. v. City of New York,
    315 F. Supp. 2d 461 (S.D.N.Y. 2004)..................................................................18

New York Pet Welfare Ass'n v. City of New York,
    143 F. Supp. 3d 50 (E.D.N.Y. 2015),
    aff'd 850 F.3d 79 (2d Cir. 2017),
    cert denied, 138 S. Ct. 131 (2017) .....................................................................12

New York v. United States Dep't of Homeland Sec.,
    969 F. 3d 42 (2d Cir. 2020)................................................................................25

Ohralik v. Ohio State Bar Ass'n,
    436 U.S. 447 (1978).........................................................................................17

**Cases**                                                                                          **Pages**

Oregon Restaurant & Lodging Ass'n v. Brown,
   2020 U.S. Dist. LEXIS 220414 (D. Or. 2020)........................................................22

Parsons v. Pond,
   126 R. Supp. 2d 205 (D. Conn. 2000) .................................................................16

Penn Central Transportation Co. v. New York City,
   438 U.S. 104 (1978)..........................................................................................20

Pers. Adm'r of Mass. v. Feeney,
   442 U.S. 256 (1979)............................................................................................8

Phillips v. City of New York,
   775 F.3d 538 (2d Cir. 2015)..........................................................................12, 14

Plaza Health Labs., Inc. v. Perales,
   878 F.2d 577 (2d Cir. 1989)................................................................................6

Plaza Motors of Brooklyn, Inc. v. Cuomo,
   2021 U.S. Dist. LEXIS 12726 (E.D.N.Y 2021)...................................................12

Prince v. Massachusetts,
   321 U.S. 158 (1944).........................................................................................14

Progressive Credit Union v. City of New York,
   889 F.3d 40 (2d Cir. 2018)...........................................................................10, 11

Roberts v. U.S. Jaycees,
   468 U.S. ..........................................................................................................17

Roman Catholic Diocese of Rockville Ctr. v. Inc. Bill of Old Westbury,
   128 F. Supp. 3d 566 (E.D.N.Y. 2015) ...............................................................14

Roman Catholic Diocese v. Cuomo,
   141 S. Ct. 63 (2020)....................................................................................18, 26

Romer v. Evans,
   517 U.S. 620 (1996).........................................................................................10

Romero v. City of New York,
   839 F. Supp. 2d 588 (E.D.N.Y. 2012) ...............................................................15

Rowe v. City of Elyria,
   38 Fed. Appx 277 (6th Cir. 2002)......................................................................19

**Cases**                                                                                    **Pages**

In re Rutledge,
    956 F.3d 1018 (8th Cir 2020) ...........................................................................7

New York ex rel. Schneiderman v. Actavis PLC,
    787 F.3d 638 (2d Cir. 2015)...........................................................................25

SH3 Health Consulting, LLC v. Page,
    459 F. Supp. 3d 1212 (E.D. Mo. 2020)....................................................15, 18

Sherman v. Town of Chester,
    752 F.3d 554 (2d. Cir. 2014)..........................................................................20

Trump v. Deutsche Bank AG,
    943 F.3d 627 (2d Cir. 2019)............................................................................6

United States v. 30.64 Acres Land,
    795 F.2d 796 (9th Cir. 1986) .........................................................................19

United States v. Kozminski,
    487 U.S. 931 (1988).......................................................................................19

Vance v. Bradley,
    440 U.S. 93 (1979).........................................................................................10

Votta v. Castellani,
    600 Fed. Appz. 16 (2d Cir. 2015) .................................................................15

W.D. v. Rockland Cty.,
    221 U.S. Dist. LEXIS 33515 (S.D.N.Y. Feb. 22, 2021)......................13, 23, 24

Ward v. Rock Against Racism,
    491 U.S. 781 (1989).......................................................................................18

Washington v. Davis,
    426 U.S. 229 (1976).........................................................................................8

Wine & Spirits Retailers, Inc. v. Rhode Island,
    418 F.3d 36 (5th Cir. 2005) .....................................................................17, 18

Zucht v. King,
    260 U.S. 174 (1922).......................................................................................12

**Statutes**

NYS Exec. Law § 20 ............................................................................................22

**Cases**                                                                                                          **Pages**

NYS Exec. Law § 24 ........................................................................................................22, 23

NYS Exec. Law § 24(a) ........................................................................................................23

NYS Exec. Law § 24(c) ........................................................................................................23

Defendants, MAYOR BILL de BLASIO, in his official capacity as Mayor of the City of New York ("Mayor de Blasio") and the City of New York ("City") by their attorney, GEORGIA M. PESTANA, Corporation Counsel of the City of New York, submit this memorandum of law in opposition to Plaintiffs' motion for a preliminary injunction.

## PRELIMINARY STATEMENT

Plaintiffs seek to enjoin Key to NYC, the City's program designed to incentivize vaccinations in order to stem the spread of COVID-19.  Key to NYC requires patrons and employees of businesses that provide purely recreational activities to be vaccinated prior to entering inside of such businesses.  Plaintiffs are unlikely to succeed on the merits of their claims. While admitting that Key to NYC is facially neutral, Plaintiffs allege that it discriminates against African-Americans and Hispanics by disparately impacting them, however, Key to NYC is equally applicable to all races and the vaccine is equally accessible.  Moreover, Plaintiffs cannot show that the intent of Key to NYC, which was clearly to encourage those unvaccinated in the City to get vaccinated, was to discriminate against African-Americans and Hispanics.  Plaintiffs' claim that Key to NYC discriminates against them because they are treated differently than other similarly situated businesses is also unlikely to succeed due to Plaintiffs' failure to sufficiently identify comparators. Plaintiffs' litany of substantive due process claims are unlikely to succeed as Plaintiffs have failed to identify a fundamental right infringed by Key to NYC or sufficiently allege any constitutional violations. Moreover, Key to NYC is clearly rational and not conscience shocking.  Indeed, vaccine requirements have withstood substantive due process claims and been upheld for over a century. Furthermore, there is no question that Mayor de Blasio acted within his authority pursuant to the Executive Law when he issued the Key to NYC executive orders in response to the pandemic emergency.  Plaintiffs are also unlikely to succeed on their Freedom of Association claim as they have failed to identify an expressive purpose for which they have been

denied the right to associate. Plaintiffs' Takings claim is meritless as any economic harm is speculative; the covered businesses may still serve vaccinated and unvaccinated customers. Furthermore, the nature of the government action to promote the common good and fight a global pandemic undercuts Plaintiffs' Takings claim.

**STATEMENT OF MATERIAL FACTS**

**COVID-19 Background**

Since March of 2020, New York City, along with the rest of the world, has been struggling with COVID-19, a new, potentially severe, and sometimes fatal, viral infection. The COVID-19 pandemic is unprecedented in its scope, affecting nearly every country in the world. Its devastating health outcomes, both direct and indirect, cause enormous public health concerns. See the Declaration of Dr. Jay Varma ("Varma Dec.") at ¶ 7. The virus that causes COVID-19 remains prevalent in United States and throughout the world, because there is no medication that can cure infection and the percentage of individuals who have been vaccinated globally and domestically is not sufficient to achieve high levels of population immunity. Id. at ¶ 13. It is thus, of primary importance, that the City take all the steps it can to increase vaccination rates.

**COVID-19 Vaccination**

Widespread vaccination will reduce the number of cases of COVID-19 and will reduce the number of severe illness and deaths. Id. at ¶ 26. A population that is 100% vaccinated will be protected against outbreaks and surges in hospitalizations; the exact level below 100% that is sufficient for such protection is unknown. Id. This threshold (known as the "population immunity" or "herd immunity" threshold) goes up the more infectious the virus is; with the Delta variant, it is likely that the threshold is greater than 90%, but further research and observation is needed before the exact level can be known. Id.

2

Additionally, COVID-19, like all viruses, mutates because of errors in the process of replicating its genetic code. Some mutations can change the characteristics of a virus including its contagiousness (how easily one person spreads infection to another person), its immune evasion (how much it is able to infect people who have some immunity from prior infection or vaccination), and its virulence (how severe of an illness it causes). Id. at ¶ 14.  Notably, almost all New York City cases are now primarily of the Delta variant, which is 2 to 3 times more contagious than the original strain. Id.  Widespread vaccination would also delay, or possibly prevent, the emergence of more dangerous variants, because the fewer people who are infected, the fewer opportunities there are for the virus to mutate and spread. Id. at ¶ 26.

Vaccination benefits both vaccine recipients and those with whom they come into contact, including individuals who are ineligible for the vaccine.  Id. at ¶ 27.  A vaccinated person has a lower risk of acquiring infection than an unvaccinated person, and, therefore, a vaccinated person is at substantially lower risk of spreading infection to household members and the community. Id.  If a vaccinated person is infected, even with the Delta variant, emerging evidence indicates that they are less likely to infect other people, because they are infectious to others for fewer days than an unvaccinated person. Id. The benefit of having a fully vaccinated population is that risk is exponentially reduced.  Id.

The percentage of New York City Residents fully vaccinated is 63.8%; the total percentage that have received at least one dose is 70.8%.[1]  This total includes all residents, including those who may not be eligible due to age or medical condition.  The rate of vaccination among the population as a whole must be considered, rather than just those eligible for the vaccine,

---

[1] DOHMH, COVID-19 Data, Vaccines, available at: https://www1.nyc.gov/site/doh/covid/covid-19-data-vaccines.page (last visited Oct. 1, 2021)

because individuals ineligible for the vaccine can still contract and transmit the virus. Id. at ¶ 28.

Thus, population immunity depends upon all eligible individuals becoming vaccinated.  Id.

Earlier this summer, vaccination rates were much lower among young adults than they are currently.[2]  According to a CDC paper from June 2021, adults aged 18-24 were least likely to report having received a COVID-19 vaccination. Id. New York City Department of Health and Mental Hygiene data also showed that earlier this summer, individuals aged 18-34 years had the lowest vaccination rate of those eligible.[3] Id. at ¶ 30.  Their vaccination rate has greatly increased. See footnote 1; Id.

**The Key to NYC Program[4]**

The Key to NYC program, which directs that only vaccinated individuals work in and patronize certain establishments in which individuals gather for indoor dining, entertainment, and fitness, directly furthers the public health goal of increasing the number of vaccinated individuals in New York City, particularly among those who are most likely to frequent such establishments while at the same time being the most likely to have not already been vaccinated. See EEO 250, annexed to the Declaration of Kerri A. Devine, dated Oct. 5, 2021 ("Devine Dec."), as Exhibit ("Ex.") B; see also Varma Dec. at ¶ 6.

---

[2] See Brittney N. Baack, COVID-19 Vaccination Coverage and Intent Among Adults Aged 18– 39 Years — United States, March–May 2021, 70 MORBIDITY AND MORTALITY WEEKLY REPORT 928 (June 25, 2021), available at: cdc.gov/mmwr/volumes/70/wr/pdfs/mm7025e2-H.pdf.

[3] See DOHMH COVID-19 Data, supra.

[4] The Key to NYC program was first published as part of Mayoral Emergency Executive Order ("EEO") 225 on August 16, 2021.  It has since been amended, superseded, and extended by subsequent executive orders, including EEOs 226, 228 and 239.  The relevant operative language of Key to NYC is set forth in EO 250 signed on September 24,2021 and is currently effective pursuant EEO 258, dated Oct. 4, 2021.  The text of EEO 250 will be referred to herein.

Prior to instituting the Key to NYC program, New York City conducted research into motivators for vaccination.[5] The results indicated that for 55% of City residents, being able to go out to restaurants, the gym, and return to normal activities would make them more likely to get vaccinated. Among those people who were hesitant to get vaccinated, 20.8% said the ability to resume normal activities would motivate them to get vaccinated. See Baack, id.  Additionally, a recent CDC study showing that the prime motivators for getting vaccinated among adults aged 18-39 years are a desire to protect others and a desire to resume social activities.  Id.

Businesses may consider whether they are able to make reasonable accommodations pursuant to Federal, State or local law for patrons and employees who are unable to be vaccinated.[6]  Specifically:

> Each Key to NYC business should consider appropriate reasonable accommodations, keeping in mind the purposes behind this policy and public health. For additional information, call the Small Business Services hotline at 888-SBS-4-NYC or visit CCHR's website at https://www1.nyc.gov/site/cchr/community/covid-public-places.page and read CCHR's fact sheets: Key to NYC: Guidance for Customers and Employees on Equitable Implementation and Key to NYC: Guidance for Businesses on Equitable Implementation.

Key to NYC Frequently Asked Questions at p. 7.

---

[5] See Global Strategy Group, May Coronavirus Poll Findings, annexed to the Varma Dec. as Ex. C.

[6] See Key to NYC Frequently Asked Questions, available at: https://www1.nyc.gov/assets/counseltothemayor/downloads/Key-to-NYC-FAQ.pdf (last visited Aug. 30, 2021); New York City Commission on Human Rights Guidance for Businesses on Equitable Implementation of Key to NYC, available at: https://www1.nyc.gov/assets/cchr/downloads/pdf/materials/KeyToNYC_FactSheet-Business.pdf (last visited Aug. 30, 2021).

**LEGAL STANDARD**

Plaintiffs fail to satisfy the standards for the issuance of a preliminary injunction. In order to establish their entitlement to the drastic remedy of a preliminary injunction against government action taken in the public interest, Plaintiffs must establish: (1) that they will be irreparably injured if the relief sought is not granted; (2) that they are likely to succeed on the merits of their claims; (3) that a balance of the hardships tips decidedly in their favor; and (4) that an injunction would be in the public interest.  See <u>Trump v. Deutsche Bank AG</u>, 943 F.3d 627, 637-640 (2d Cir. 2019); <u>Cent. Rabbinical Cong. of the United States v. NYC Dep't of Health & Mental Hygiene</u>, 763 F.3d 183, 192 (2d. Cir. 2014); <u>Plaza Health Labs., Inc. v. Perales</u>, 878 F.2d 577, 580 (2d Cir. 1989).  See also <u>Bery v. City of New York</u>, 97 F.3d 689 (2d Cir. 1996), <u>cert. denied</u>, 520 U.S. 1251 (1997).

**ARGUMENT**

**POINT I**

**PLAINTIFFS' CLAIMS ARE NOT LIKELY TO
SUCCEED ON THE MERITS**

**A.    The Standard Set Forth in Jacobson v. Massachusetts Applies.**

The Supreme Court, in the seminal case <u>Jacobson v. Massachusetts</u>, 197 U.S. 11, 31, 25 S. Ct. 358, 363 (1905), acknowledged that "[t]he possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order, and morals of the community." <u>Jacobson</u>, 197 U.S. at 26. The <u>Jacobson</u> Court set forth a deferential standard when reviewing a statute mandating smallpox vaccinations and "purporting to have been enacted to protect the public health, the public morals or the public safety," but which allegedly violates a fundamental constitutional right. <u>Jacobson</u>, 197 U.S. at 31. Such a statute must not be disturbed unless it "has no real or substantial

relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law..." Id. In other words, "this review [is] asking whether power had been exercised in an 'arbitrary, unreasonable manner,'" In Re Abbott, 954 F. 3d 772, 784 (5th Cir Apr. 7, 2020) (quoting Jacobson at 28, 38).

  Numerous courts have applied the standard set forth in Jacobson to COVID-19 related restrictions. See, e.g., Hopkins Hawley LLC v. Cuomo, 2021 U.S. Dist. LEXIS 24580 *11 (S.D.N.Y. Feb. 9, 2021); In re Rutledge, 956 F.3d 1018 (8th Cir 2020); Columbus Ale House, Inc. v. Cuomo, 2020 U.S. Dist. LEXIS 191828 *4-5 (E.D.N.Y. Oct. 15, 2020); H's Bar, LLC v. Berg, 2020 U. S. Dist. LEXIS 218371 (S.D. Ill. Nov. 21, 2020); Ass's of Jewish Camp Operators v. Cuomo, 2020 U.S. Dist. LEXIS 117765 (N.D.N.Y. July 6, 2020) (collecting cases); League of Indep. Fitness Facilities & Trainers v. Whitmer, 2020 U.S. Dist. LEXIS 110884 (W.D. MI. June 19, 2020); McCarthy v. Cuomo, 2020 U.S. Dist. LEXIS 107195 (E.D.N.Y. June 18, 2020) (collecting cases).  Courts have also recently applied the Jacobson standard to constitutional challenges to vaccine mandates. See Klaasen v. Trs. Of Ind. Univ., 2021 U.S. Dist. LEXIS 133300 *57-8 (N.D. Indiana, South Bend Div. July 18, 2021), motion for injunction pending appeal denied by Klaassen v. Trs. of Ind. Univ., 2021 U.S. App. LEXIS 22785*2 (7th Cir. Aug. 2, 2021); Maniscalco v. New York City Dep't of Educ., 2021 U.S. Dist. LEXIS 184971, *8 (E.D.N.Y. Sept. 23, 2021).

  Because Key to NYC has a substantial relation to public health and safety through incentivizing an increase in overall vaccination rates and, over time, increasing the rate of fully vaccinated patrons and employees frequenting indoor recreational venues, and is not beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it must be upheld.

However, even if <u>Jacobson</u> were not applicable, Key to NYC easily survives the traditional constitutional analyses.

**B.    <u>Plaintiffs' Equal Protection Claims are Not Likely to Succeed on the Merits</u>**

    **1.    <u>The Key to NYC Program Does Not Discriminate Based on Race</u>**

        Plaintiffs concede that the Key to NYC Program is facially neutral and argue solely that it "will disparately impact the rights and lives of African-Americans and Hispanics…." <u>See</u> Compl. ¶¶ 150-51. However, to successfully establish that a race neutral law violates the equal protection clause of the Fourteenth Amendment, a plaintiff cannot solely rely on the fact that the law has a racially disproportionate impact but must also show that the impact is traced to the intent to discriminate on the basis of race. <u>Pers. Adm'r of Mass. v. Feeney</u>, 442 U.S. 256, 260 (1979), citing <u>Washington v. Davis</u>, 426 U.S. 229, 238-44 (1976). "Discriminatory purpose [or intent] 'implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.'" <u>Congregation Rabbinical College of Tartikov, Inc. v. Vill. of Pomona</u>, 915 F. Supp. 2d 574, 616 (S.D.N.Y. 2013) quoting <u>Hayden v. County of Nassau</u>, 180 F.3d 42, 50 (2d Cir. 1999).

        Here, Plaintiffs essentially argue that they believe the Mayor knew that this order would disproportionally impact African-Americans and Hispanics and executed it anyway. <u>See</u> Compl. ¶¶ 45 and 151.   Initially, Defendants do not believe that Key to NYC Program disproportionally adversely impacts African-American or Hispanic individuals any more than other non-African-American or non-Hispanic individuals. All races have equal access to the vaccine and the vaccine requirement is equally applicable to all races. In any event, disparate impact alone is insufficient to succeed on an equal protection claim. Plaintiffs must be able to show that Defendants instituted the Key to NYC Program with the intent or purpose to discriminate against African-American and Hispanic citizens, which they cannot. The purpose of the Key to

NYC Program as expressly stated on the executive orders, is to encourage more City residents to get vaccinated because the leading health experts have indicated that the most effective tool to mitigate the spread of COVID-19 and protect against severe illness is through vaccination. Devine Dec., Ex. A. A population that is 90% to 100% vaccinated will be protected against outbreaks, surges in hospitalizations, and possibly prevent the emergence of more dangerous variants. See Varma Dec. at ¶ 26. Defendants believe that mandating vaccination at the types of establishments that City residents frequent will incentivize vaccinations and therefore increase the vaccination numbers in the City. See Id. ¶ 36. Although Plaintiffs rely on statements made by the Mayor in the past, that African-Americans and Hispanics have lower vaccination numbers, such statements were not made in relation to the Key to NYC Program. The purpose of the Key to NYC Program has clearly been stated, to encourage all City residents regardless of race to get vaccinated. Further, "if consideration of racial data were alone sufficient to trigger strict scrutiny, then legislators and other policymakers would be required to blind themselves to the demographic realities of their jurisdictions and the potential demographic consequences of decisions. Castillo v. Whitmer, 823 Fed. Appx 413, 416 (6th Cir. 2020) (internal citation omitted).

To the extent Plaintiffs Shaw Nae's House, LLC, Salty Dog Restaurant, LTD, PER Tavern Corp., Cargostork Parties, Inc., and Independent Restaurant Owners Association Rescue, Inc., allege that the Key to NYC Program forces them to discriminate on the basis of race, that claim is without merit. As stated above, the Key to NYC Program is not discriminatory in effect or by intent. As such, Key to NYC does not compel Plaintiffs to engage in discriminatory conduct.

## 2.   The Key to NYC Program is Subject to and Satisfies Rational Basis Review

Plaintiffs', Shaw Nae's House, LLC, Salty Dog Restaurant, LTD, PER Tavern Corp., Cargostork Parties, Inc., and Independent Restaurant Owners Association Rescue, Inc.,

equal protection claim also fails.  "A statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  Progressive Credit Union v. City of New York, 889 F.3d 40, 49 (2d Cir. 2018). Restaurants, gyms and other indoor entertainment venues do not belong to any suspect classes and there is no fundamental right to particular employment or to run a business without restrictions.  Vance v. Bradley, 440 U.S. 93, 96-97 (1979). The burden falls to the party attacking the statute as unconstitutional to "negat[e] every conceivable basis which might support it." Lewis v Thompson, 252 F3d 567, 582 (2d Cir 2001) (internal citation omitted).

The Key to NYC Program easily satisfies rational basis review.  "[R]ational basis review in an equal protection analysis is 'not a license for the courts to judge the wisdom, fairness, or logic of legislative choices.'" Heller v. Doe, 509 U.S 312, 319 (1993) (quoting FCC v. Beach Communications, Inc., 508 U.S. 307, 313, (1993)). Regulations that do not employ suspect classifications carry "a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." Concerned Home Care Providers, Inc. v. Cuomo, 783 F.3d 77, 90–92 (2d Cir. 2015) (quoting Hodel v. Indiana, 452 U.S. 314, 331(1981)). "[L]egislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985).  As long as the rational basis test is met, the statute will be upheld "even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." Romer v. Evans, 517 U.S. 620, 632 (1996).

There is a rational basis for the City's requirement that patrons and employees participating (or working in) in indoor dining, entertainment venues, or fitness centers show proof

of vaccination prior to entering such establishments. Indeed, this Court has previously recognized that vaccination is "one of the most highly regarded" tools in reducing the spread of COVID-19. Maniscalco, 2021 U.S. Dist. LEXIS 184971 at *11. As discussed, Key to NYC is intended to increase vaccination rates thereby ensuring widespread immunity to the virus through vaccination, and, over time, preventing transmission. Varma Dec. at ¶ 41. It is apparent that Key to NYC was implemented to avoid any further harm caused by the virus to individuals and businesses. See Id. at ¶¶ 37-41. This is especially true considering the recent uptick in COVID-19 cases throughout the City and country. Id at ¶18.

**3. Plaintiffs fail to identify sufficient comparators.**

Here, Plaintiffs generally allege that they are treated differently than other similarly situated businesses such as hotels, banks, and residential high rise buildings.  Compl. at ¶ 188. Indeed, Plaintiffs, who are restaurants and a gym, simply cannot show that hotels, banks, and residential high rise buildings are "prima facie identical" or have an "extremely high" degree of similarity to their businesses. See Progressive Credit Union, 889 F.3d at 49. The Complaint is devoid of any meaningful discussion as to how Plaintiffs bear a reasonably close resemblance to hotels, banks, residential high rise buildings or any other business not covered by Key to NYC. Key to NYC covers establishments that provide purely recreational activities, while the alleged "similarly situated" entities Plaintiffs assert as comparators provide daily necessities.  Dining indoors at a restaurant or being inside a gym involve groups of individuals leisurely engaging in eating or physical activity. Banks do not offer food or workout equipment to the individuals that enter their businesses. Hotels and residential high rise buildings involve individuals who are generally entering to sleep and/or stay at these businesses for several days, months, or years; such are not activities that can be done at a restaurant or gym.

To the extent that Plaintiffs are also alleging that the Key to NYC Program treats them differently than other businesses similar to them located outside of New York City, this argument has no merit. Compl. at ¶ 189. Significantly, the Mayor only has authority to issue executive orders that effect businesses within the City. In any event, indoor entertainment businesses outside of the City are not highly similar to Plaintiffs. Areas outside of the City are not as densely populated as the City and challenges facing the City in its continued to efforts to combat COVID-19 are not similar to outside of the City. See Plaza Motors of Brooklyn, Inc. v. Cuomo, 2021 U.S. Dist. LEXIS 12726, *15 (E.D.N.Y 2021) (holding that the correct comparator for automobile dealership within the red zone is other dealerships inside, not outside of, the red zone).

**C.    Plaintiffs' Substantive Due Process Claims are Unlikely to Succeed on the Merits. [7]**

Courts, including the U.S. Supreme Court, have repeatedly upheld vaccine requirements, many more far reaching than Key to NYC, and found that they do not violate substantive due process rights. See Jacobson, Zucht v. King, 260 U.S. 174 (1922); Phillips v. City of New York, 775 F.3d 538 (2d Cir. 2015), Caviezel v. Great Neck Pub. Schs., 500 Fed. Appx. 166 (2d Cir. 2012). Plaintiffs fail to identify a constitutional right of which they have been deprived; Plaintiffs do not have a constitutional right to patronize or work at the establishments

---

[7] While the Plaintiffs' Brief in Support of Order to Show Cause with Temporary Restraints and Seeking Other Relief ("PI Brief") contains a general reference to plaintiffs' "other rights protected by the Due Process Cause," being "trampled," it does not specifically address an alleged violation of procedural due process. PI Brief at 2. To the extent their motion is premised on a procedural due process claim, that claim is not likely to succeed. Plaintiffs were not entitled to procedural due process prior to the enactment of Key to NYC as it is legislative in nature and applies prospectively and generally to all restaurants, indoor entertainment and recreational settings and indoor gyms and fitness settings . See Hopkins Hawley, LLC, 2021 U.S. Dist. LEXIS 24580, *16; Our Wicked Lady LLC, 2021 U.S. Dist. LEXIS 44505, *13. As such, they are not subject to the due process requirements of notice and an opportunity to be heard. Id., New York Pet Welfare Ass'n v. City of New York, 143 F. Supp. 3d 50, 70 (E.D.N.Y. 2015), aff'd 850 F.3d 79 (2d Cir. 2017), cert denied, 138 S. Ct. 131 (2017). "A person adversely affected by a law of general applicability has no due process right to a hearing[.]" Hartman v. Acton, 2020 U.S. Dist. LEXIS 72068 *22 (S.D. Ohio Apr. 21, 2020). See also Logan v. Zimmerman Brush Co., 455 U.S. 422, 433.

covered by the Key to NYC Program.  Even if they had demonstrated a deprivation of a constitutional right, their substantive due process claims still fail. To establish a violation of substantive due process,  Plaintiffs must first identify a constitutional right at stake and then, "demonstrate that the state action was so outrageous, that it may fairly be said to shock the contemporary conscience." Hurd v. Fredenburgh, 984 F.3d 1075, 1087 (2d Cir. 2021)(citation omitted).  Plaintiffs' substantive due process claims fail because Key to NYC does not shock the conscience.  See, e.g., Maniscalco, 2021 U.S. Dist. LEXIS 184971, at *8-9; see Point I(C)(2).

   1. **Religious Exemptions**

         Plaintiffs wrongly assert that Key to NYC violates their right to substantive due process in that it lacks a religious exemption. Initially, to the extent permitted by law, employees may seek a reasonable accommodation on religious grounds. In any event, as the lack of a religious exemption does not violate the First and Fourteenth Amendments, Key to NYC does not run afoul of substantive due process. The applicable standard for analyzing plaintiffs' First and Fourteenth Amendment claims is whether or not Key to NYC has a rational basis, which plaintiffs fail to even address.  The rational basis standard is applicable even where neutral regulations, such as Key to NYC, incidentally burden religious practices. See Fifth Ave. Presbyterian Church v. City of New York, 293 F.3d 570 (2d Cir. 2002); W.D. v. Rockland Cty., 221 U.S. Dist. LEXIS 33515 (S.D.N.Y. Feb. 22, 2021);  Klassen v. Trs. of Ind. Univ., 2021 U.S. Dist. LEXIS 133300 *66-7 (N.D.IN July 18, 2021); C.F. v. New York City Dept. of Health & Mental Hygiene, 191 A.D.3d 52, 78 (2d Dep't 2020).

Key to NYC is neutral and generally applicable in that it is not specifically directed at a religious practice and it does not only burden conduct motivated by religious beliefs.[8] See Roman Catholic Diocese of Rockville Ctr. v. Inc. Bill of Old Westbury, 128 F. Supp. 3d 566, 581-584 (E.D.N.Y. 2015).  Indeed, plaintiffs acknowledge that Key to NYC is "facially neutral" in its wording and "facially of general applicability" and do not allege that it was intended to target certain religions or religious practices.  Compl. at ¶ 150; Plaintiffs' Brief in Support of Order to Show Cause with Temporary Restraints and Seeking Other Relief ("PI Brief") at 1.  Accordingly, the lack of a religious exemption does not render Key to NYC unconstitutional.  See Phillips, 775 F.3d at 543.  "The right to practice religion freely does not include liberty to expose the community or the child to communicable disease…."  Prince v. Massachusetts, 321 U.S. 158, 166-7 (1944).

## 2. **Bodily Integrity**

Plaintiffs incorrectly allege that the coercive nature of Key to NYC violates their right to substantive due process by depriving them of the their liberty interest in bodily health and integrity.  Compl. At ¶¶156-8.  Key to NYC, however, presents plaintiffs with a choice of whether or not to be vaccinated. This scenario is highly distinguishable from the cases plaintiffs rely on in support of their substantive due process claim premised on an infringed right to bodily integrity, all of which involved forcible, physical bodily intrusions. See PI Brief at 12-14.

Even assuming arguendo, that Key to NYC does infringe on Plaintiffs' bodily integrity through forcible intrusions, which it does not, plaintiffs fails to sufficiently allege that such infringement "is so egregious, so outrageous, that it may be fairly said to shock the contemporary conscience."  See Lombardi v. Whitman 485 F. 3d 73, 79 (2d Cir. 2007)(citations

---

[8] Houses of worship were not included as "Covered premises" in EO 228, and in fact, in E.O. 250, houses of worship are explicitly excluded.  Devine Dec., Ex. A & B.

omitted).  "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id. at 82 quoting County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998).  Actions found to constitute conscience shocking infringements on bodily integrity have included sexual assault and abuse of a student by a teacher and choking, dragging, punching and slamming the head of a student.  See Romero v. City of New York, 839 F. Supp. 2d 588 (E.D.N.Y. 2012); (Johnson v. Newburgh Enlarged School District, 239 F.3d 246, 251 (2d Cir. 2001). Slapping a student, however, has been found not to be conscience shocking.  Votta v. Castellani, 600 Fed. Appz. 16, 19 (2d Cir. 2015).   Incentivizing vaccination during a pandemic by providing individuals with a choice of whether to get vaccinated or engage in certain recreational activities clearly does not rise to the level of conscience shocking behavior. Indeed, many COVID-19 related restrictions, including vaccine mandates, have been found to not be conscience shocking.  See Maniscalco, 2021 U.S. Dist. LEXIS 184971, *9; World Gym, 2020 U.S. Dist. LEXIS 131236 *12; Page, 2020 U.S. Dist. LEXIS 183769 *31; Hopkins Hawley, 2021 U.S. Dist. LEXIS 24580 at *17.

   **3. Parental Rights**

        Plaintiffs allege that Key to NYC deprives them of the right to direct the upbringing of their children, including the right not to get their 12 to 17 year old children vaccinated. Compl. at ¶164.  Parental rights with respect to the upbringing of children are not absolute.  Aviles v. De Blasio, 2021 U.S. Dist. Lexis 38930, *57 (S.D.N.Y March 2, 2021).  Plaintiffs' parental rights claim is subject to rational review; Plaintiffs cite no authority to the contrary. Immediato v. Rye Neck Sch. Dist., 73 F.3d 454, 461 (2d Cir. 1996); Doe v. Zucker, 2021 U.S. Dist. LEXIS 28937, *64 (N.D.N.Y. Feb. 17, 2021). The constitutionality of Key to NYC with respect to parental rights is abundantly clear from the many Court decisions upholding mandatory vaccination requirements

for school attendance, as education is a far weightier interest than indoor dining or recreation when balancing it against the interest in stemming the spread of disease.  See Zucht, Caviezel, Doe. v. Zucker, C.F. v. NYC Dep't of Health and Mental Hygiene.  "The right to free exercise of religion and parental rights are subordinated to society's interest in protecting against the spread of disease." Boone v. Boozman, 217 F. Supp. 2d 938, 954 (E.D. Ark. 2002).

### 4. **Right to Hold Specific Private Employment and Follow a Chosen Profession.**

Plaintiff owners and employees of businesses covered by Key to NYC claim that Key to NYC is driving them out of their chosen professions. Compl. at ¶¶173-4. To succeed on a substantive due process claim premised on a right to hold specific private employment and follow a chosen profession, Plaintiffs must show that Key to NYC has "completely prohibited" them from engaging in their chosen professions.  Hu, 927 F. 3d at 102 (2d Cir. 2019); Maniscalco, 2021 U. S. Dist. LEXIS 184971, *6 . Plaintiffs cannot make such a showing.  Unvaccinated owners of businesses can hire managers to run their businesses in their absence, and even manage operations from off site.   "The right to conduct business or engage in a chosen profession does not entitle plaintiff to operate its business free from governmental regulation." Columbus Ale House, Inc. v. Cuomo, 2020 U.S. Dist. LEXIS 191828, *12 (E.D.N.Y. Oct. 15, 2020).   Additionally, unvaccinated employees may seek a reasonable accommodation pursuant to Federal, State or local law and may seek similar employment outside of New York City, or, to the extent possible, in an outdoor or virtual setting at a covered business in New York City.  "[T]he Due Process Clause secures the liberty to pursue a calling or occupation, and not the right to a specific job." Parsons v. Pond, 126 R. Supp. 2d 205, 207 (D. Conn. 2000).  Moreover, to the extent Plaintiffs' claim is premised on speculation that Key to NYC will result in lost business, that is similarly insufficient to support a substantive due process claim.  Hu v. City of New York, 927 F.3d 81, 102 (2d Cir.

2019), citing <u>JWJ Indus., Inc., v. Oswego Cty.</u>, 538 F. App'x 11, 14 (2d Cir. 2013).  In any event, even if Key to NYC did deprive plaintiffs of a liberty interest, Key to NYC is clearly not conscience shocking as it was clearly intended to stem the spread of COVID-19. <u>See</u> Point I(B)(2), supra.

**D.**     **<u>Plaintiffs' Freedom of Association Claim is Not Likely to Succeed on the Merits.</u>**

Freedom of assembly,[9] "the right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends," does not exist in the abstract. <u>Roberts v. United States Jaycees</u>, 468 U.S. 609, 622 (1984); <u>Wine & Spirits Retailers, Inc. v. Rhode Island</u>, 418 F.3d 36, 50 (5th Cir. 2005).  To trigger First Amendment protections, the assembly must be for an expressive purpose.  <u>Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth Dep'ts</u>, 852 F.3d 178, 187-188 (2d Cir. 2017); <u>Givens v. Newsom</u>, 459 F. Supp. 3d at 1314, quoting <u>Roberts</u>, 468 U.S. at 618. "[T]he State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity." <u>Ohralik v. Ohio State Bar Ass'n</u>, 436 U.S. 447, 456 (1978).

Plaintiffs' failure to identify an expressive purpose for which they have been denied the right to assemble is fatal to their claim. Plaintiffs' Freedom of Association claim is premised on the alleged inability of "patrons and staff to associate with vaccinated and unvaccinated individuals…" and to keep "the company of unvaccinated citizens." Compl. at ¶¶ 146, 169. While it clear that conversing with patrons is a component of running a business such as a restaurant or gym, small talk and the exchange of pleasantries are not entitled to First Amendment protection. <u>See</u> <u>Dallas v. Stanglin</u>, 490 U.S. 19, 24 (1989)("dance-hall patrons -- coming together to engage

---

[9] Today, freedom of association and freedom of assembly are largely viewed as one. See <u>Givens v. Newsom</u>, 459 F. Supp. 3d 1302, 1314 (E.D.C.A. 2020), quoting <u>Roberts v. U.S. Jaycees</u>, 468 U.S. at 618.

in recreational dancing -- is not protected by the <u>First Amendment</u>."); <u>Wine & Spirits Retailers, Inc.</u>, 418 F.3d at 53.  In fact, Courts have specifically held that COVID-19-related restrictions on businesses did not infringe upon free assembly or associational rights.  <u>See Hopkins Hawley LLC v. Cuomo</u>, 2021 U.S. Dist. LEXIS 24580 *20; <u>Coachella Valley Hosp. Unites v. Newsom</u>, 2021 U.S. Dist. LEXIS 134314, *10-11 (C.D. Ca. July 13, 2021); <u>SH3 Health Consulting, LLC v. Page</u>, 459 F. Supp. 3d 1212, 1225 (E.D. Mo. 2020). Accordingly, as Plaintiffs have failed to allege that Key to NYC interferes with their ability to associate for an expressive purpose, the vaccine requirement does not run afoul of the First Amendment. <u>See</u> <u>New York City C.L.A.S.H. v. City of New York</u>, 315 F. Supp. 2d 461, 474 (S.D.N.Y. 2004).

Moreover, even if plaintiffs had identified a constitutionally protected expressive purpose in their associational claim, Key to NYC, which is clearly a content-neutral, time, place and manner restriction, is justified in that it is "narrowly tailored to serve a significant governmental interest" and "leave[s] open ample alternative channels for communication of the information." <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 791 (1989). Indeed, not only does it serve a significant interest, but as the Supreme Court held, stemming the spread of COVID-19 is an "unquestionably" compelling interest. <u>Roman Catholic Diocese v. Cuomo</u>, 141 S. Ct. 63, 67 (2020).  Moreover, Key to NYC leaves open alternative channels for communication such as outdoor dining and outdoor and virtual fitness classes.

## E.     <u>Plaintiffs' Indentured Servitude Claim is Not Likely to Succeed</u>

Plaintiffs erroneously allege that requiring businesses, as well as their employees, to check proof of vaccination and identification prior to allowing customers indoors or face fines is tantamount to "indentured servitude." <u>See</u> Compl. ¶¶ 176-80. Initially, Key to NYC is a minimal regulation on businesses to check identification and proof of vaccination prior to allowing a person to enter their business and at most face a monetary fine. "The [Supreme] Court has recognized that

18

the prohibition against involuntary servitude does not prevent the State or Federal Governments from compelling their citizens, by threat of criminal sanction, to perform certain civic duties [e.g., jury service, military service, and roadwork]." United States v. Kozminski, 487 U.S. 931, 943-44 (1988) citing to Hurtado v. United States, 410 U.S. 578, 589, n. 11 (1973); Selective Draft Law Cases, 245 U.S. 366, 390 (1918); Butler v. Perry, 240 U.S. 328, 332 (1916). The Courts have continuously held that government can require its citizens to perform certain acts without violating the Thirteenth Amendment. See United States v. 30.64 Acres Land, 795 F.2d 796 (9th Cir. 1986) (a state may require attorneys to work pro bono, the attorney in the alternative could choose not to practice law); Rowe v. City of Elyria, 38 Fed. Appx 277 (6th Cir. 2002) (local government ordinance that prohibited grass or weeds to exceed twelve inches did not subject plaintiff to involuntary servitude); Abney v. Campbell, 206 F.2d 836 (5th Cir. 1953) (requiring employers to withhold and account to the government the portions of employees' wages withheld for income taxes was not imposing involuntary servitude upon an employer).

Requiring Plaintiffs to check proof of vaccination and identification before permitting them to allow a customer to utilize their indoor services is not involuntary servitude. The notion that it is, is frivolous. Abney, 206 F.2d at 841. This requirement is no different than the requirement that bars and restaurants check identification before serving alcohol to ensure patrons are of legal drinking age or the requirement that employers must withhold and account to the government the portions of employees' wages withheld for income taxes. Here, Plaintiffs are not being required to do anything more than they would do before serving alcohol and is far less labor than accounting for income taxes. The requirement to be vaccinated to enter Plaintiffs' businesses, as stated above, has a valid, rational government purpose and does not violate the constitution,

therefore the enforcement of the Key to NYC Program, does not violate the Thirteenth Amendment. Id.

F.      **Plaintiffs' Takings Claim is Not Likely to Succeed**

Plaintiffs summarily allege that the Key to NYC renders unviable the beneficial use of their properties and impinges on their ability to operate their businesses and their reasonable investment expectations, which amounts to a non-categorical regulatory taking of their businesses and properties. See Compl. ¶¶ 192-3, 202. Anything less than a complete elimination of value, or a total loss, is a non-categorical taking, and is analyzed under the framework created in Penn Central Transportation Co. v. New York City, 438 U.S. 104 (1978); Sherman v. Town of Chester, 752 F.3d 554, 564 (2d. Cir. 2014). "A taking may be found based on a complex of factors including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." Our Wicked Lady LLC, 2021 U.S. Dist. LEXIS 44505, *15 citing Murr v. Wisconsin, 137 S. Ct. 1933, 1937 (2017). Plaintiffs cannot meet the "heavy burden" of establishing a regulatory taking.  Buffalo Teachers Fed'n v. Tobe, 464 F.3d 362, 375 (2006).

i.      **Economic Impact of the Key to NYC Program**

Plaintiffs summarily and speculatively allege that their businesses and properties will be rendered unviable by the Key to NYC Program. However, Plaintiffs are still able to serve vaccinated customers indoors and unvaccinated customers outdoors, through take-out and delivery, and virtually. Notably, while Key to NYC has been in effect for over a month, Plaintiffs provide no evidence that they have suffered or will suffer much economic impact from Key to NYC, beyond speculation. The economic impact "can only qualify as a regulatory taking if [they] 'effectively prevent Plaintiff[] from making any economic use of [its] property." Elmsford Apt. Assocs., LLC v. Cuomo, 469 F. Supp. 3d 148, 165. "Limitations on particular uses of property do

not necessarily diminish significantly [a] property's value." <u>Leb. Valley Auto Racing Corp. v. Cuomo</u>, 478 F. Supp. 3d 389, 401 (N.D.N.Y. 2020).

    ii.    **<u>Plaintiffs Fail to Plead that the Key to NYC Program Interferes with their Investment-Backed Expectations</u>**

Plaintiffs summarily allege that the Key to NYC Program interferes with their reasonable investment backed expectations, however, do not point to any facts to support this allegation. Any change in Plaintiffs' normal operations "is only temporary" and "plaintiffs do not allege that the applicable [Key to NYC] will prevent them from ever realizing a financial return on their properties, or that the value of their property will be severely reduced." <u>Leb. Valley Auto Racing Corp</u>, 478 F. Supp. 3d at 401 ("[b]y omitting discussion of investment-backed expectations, 'the pleading fails to plausibly allege a taking under this factor.'")(<u>quoting</u> <u>Kabrovski v. City of Rochester</u>, 149 F. Supp. 3d 412, 425 (W.D.N.Y. 2015); The emergency orders are temporary and are only anticipated to be renewed and remain in effect until most of the population is vaccinated or COVID-19 is no longer a threat. Even if the emergency orders remain in effect for the long term, it still does not amount to a taking as Plaintiffs can continue to do business.

    iii.    **<u>The Character of the Governmental Action</u>**

The temporary nature of the Key to NYC Program weighs against a finding that it is a regulatory taking. <u>See</u>, <u>Buffalo Teachers Fed'n</u>, 464 F.3d at 375. "The interference with plaintiffs property rights 'adjusts the benefits and burdens of economic life to promote the common good.'" <u>Our Wicked Lady LLC</u>, 2021 U.S. Dist. LEXIS at 16 citing <u>Connolly v. Pension Ben. Guar. Corp.</u>, 475 U.S. 211, 225, (1986). The character of the government action challenged in this action—<u>i.e.</u>, the emergency response to a global pandemic which resulted in temporary restrictions being placed on Plaintiffs' properties and businesses for the overall protection of the common good— undercuts Plaintiffs' claim that a taking has occurred. Courts have held that the character

of the government action in issuing orders to manage the COVID-19 pandemic is "a temporary and proper exercise of the police power to protect the health and safety of the community, which weighs against a taking." Luke's Catering Serv., LLC v. Cuomo, 485 F. Supp. 3d 369, 386 (W.D.N.Y. 2020); Oregon Restaurant & Lodging Ass'n v. Brown, 2020 U.S. Dist. LEXIS 220414, at * 18 (D. Or. 2020) (COVID-19 E.O.s are "not a physical invasion of property by the government but an emergency regulation promulgated to combat a worsening pandemic...") (internal citations omitted). The Key to NYC Program was undoubtedly enacted to promote increased vaccination rates and minimize the damaging effects of COVID-19 on the public and to protect the health and welfare of New York City citizens. COVID-19 infection rates are worse now than they were this time last year in the City. See Varma Dec. at ¶ 18. A majority of the current infection rates, hospitalizations, and deaths are among the unvaccinated population in the City. Id. at ¶ 23. Defendants maintain that mandating vaccination at the types of establishments the City residents frequent will incentivize vaccination and increase vaccination rates which saves lives. "Actions like those taken through these orders, which are undertaken to address a global pandemic, do not constitute a regulatory taking." Our Wicked Lady LLC, 2021 U.S. Dist. LEXIS at 16.

**G.    Plaintiffs' Claim that the Mayor Lacks Authority to Issue the Emergency Orders Fails is Not Likely to Succeed**

Plaintiffs wrongfully allege that the Mayor lacks authority to enact the emergency executive orders that implemented the Key to NYC Program. See Compl. ¶¶ 216. The Mayor's authority to issue emergency orders is clearly outlined in New York State Executive Law ("Exec. Law") §§ 20 and 24. Exec. Law § 20 states that local chief executives are vested with the authority and responsibility to develop and implement programs to prepare for disasters.  Exec. Law § 24 authorizes the Mayor to proclaim a local state of emergency, in the event of a disaster such as an epidemic, and upon a finding by the Mayor that the public safety is imperiled by such public

emergency.  The COVID-19 global pandemic clearly triggered the Mayor's authority to proclaim a local state of emergency.  Mayor de Blasio declared such an emergency through the issuance of E.E.O. No. 98 on March 12, 2020.  Exec. Law § 24 further provides that once the Mayor declares a local state of emergency, he may issue local emergency orders, "to protect life and property or to bring the emergency situation under control."  The actions taken by the Mayor in implementing the Key to NYC Program fall squarely within the authority proscribed by Executive Law § 24.  Courts have upheld local chief executive emergency orders that were implemented to protect the public health against the spread of disease.  See W.D. v. Rockland Cty., 2021 U.S. Dist. LEXIS 33515, (S.D.N.Y. 2021).

To the extent Plaintiffs allege that Exec. Law § 24 and the Mayor's emergency powers are unconstitutional, they are incorrect.[10] The delegation of authority set forth in Exec. Law § 24 is constitutional.  Not only is it limited to disasters and public emergencies, it provides clear guidance as to the measures the Mayor is authorized to take in the face of such emergencies, such as the regulation and closing of places of amusement and assembly and the prohibition and control of persons on public streets and places.  See Exec. Law § 24(a) and (c).

Contrary to Plaintiffs allegations, the COVID-19 global pandemic is not over and an emergency still exists. See Varma Dec. at ¶¶ 16 and 24. "Whether an actual emergency exist[s] is not the relevant inquiry….Rather, the inquiry is whether Defendants have provided sufficient and admissible evidence that Defendants reasonably believe[] an emergency exist[s]…." W.D. v. Rockland Cty., 2021 U.S. Dist. LEXIS at *35 citing Catanzaro v. Weiden, 188 F.3d 56, 63 (2d Cir. 1999).  The courts must afford the decision to invoke emergency procedures "some deference,

---

[10] Although Plaintiffs' Preliminary injunction Brief appears to abandon such a claim, they plead a cause of action for the so-called unconstitutional nature of the challenged executive orders. See Complaint, Count 12.

and avoid engag[ing] in a hindsight analysis." <u>W.D. v. Rockland Cty.</u>, 2021 U.S. Dist. LEXIS at *32 citing <u>Catanzaro</u>, 188 F.3d at 62. "Where there is competent evidence …the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion." <u>W.D. v. Rockland Cty.</u>, 2021 U.S. Dist. LEXIS at *33 citing <u>Catanzaro</u>, 188 F.3d at 63. There is sufficient evidence to show that the Mayor's action was not arbitrary or an abuse of discretion but necessary to combat a continuing emergency. The infection rates in the City are higher now than this time last year. <u>See</u> Varma Dec. at ¶ 18. The Centers for Disease Control and Prevention (CDC) reports that New York City is experiencing a high level of community transmission. <u>See</u> <u>Id</u>. A majority of those infected, hospitalized, and dying of COVID- 19 are those who are unvaccinated. Additionally, the more serious Delta variant is the majority of the COVID-19 cases seen in the City. <u>Id.</u> at ¶¶ 23-24. Currently, 3.5 million City residents are not vaccinated which could result in widespread infections of the more contagious Delta variant, as well as the  emergence of more dangerous variants. <u>See</u> <u>Id.</u> at ¶ 44. Widespread vaccination will reduce the number of COVID-19 cases and the number of severe illness and deaths. Accordingly, as there is evidence supporting the emergency the Plaintiffs claim fails.

**H.**      **Plaintiffs' Privileges and Immunities Claim Fails as a Matter of Law**

Plaintiffs allege that the Key to NYC Program violates their rights under the Privileges and Immunities clause of the Fourteenth Amendment. <u>See</u> Compl. at ¶227. For the last century the Supreme Court has maintained its ruling in the <u>Slaughter House Cases, 83 U.S. 36 (1872)</u>. The Privileges and Immunities clause of the Fourteenth Amendment protects privileges and immunities arising out of nature and essential character of national government, and granted or secured by the Constitution of United States. <u>Giozza v. Tiernan</u>, 148 U.S. 657, (1893). The ability to engage in a particular livelihood or the ability to take part in indoor entertainment,

recreation, dining, and fitness are not rights expressly granted under the constitution and therefore not protected under the Privileges and Immunities Clause. Slaughter House Cases, 83 U.S. 36. Accordingly, Plaintiffs' privileges and immunities claim is not likely to succeed.

**POINT II**

**PLAINTIFFS     CANNOT     DEMONSTRATE
IRREPARABLE HARM**

Having established that Plaintiffs have not demonstrated a likelihood of success on the merits of their claims, the remaining prongs for entitlement to a preliminary injunction test need not be considered. However, it is clear that Plaintiffs have not established that compliance with Key to NYC will lead to irreparable injury.

As Plaintiffs are unlikely to succeed on their constitutional claims, they are unlikely to establish that they have suffered a constitutional harm.  To the extent Plaintiffs allege other harms, such as increased costs of doing business, loss of business, and loss of employment, such harms constitute economic injuries.  See PI Brief at 2-3, 19; Compl. at ¶¶ 76, 91, 96, 112, 114, 132, 135, 140.   It is well-settled that economic injury alone does not qualify as irreparable harm such that plaintiffs are entitled to injunctive relief. "Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." New York v. United States Dep't of Homeland Sec., 969 F. 3d 42, 86 (2d Cir. 2020), quoting New York ex rel. Schneiderman v. Actavis PLC, 787 F.3d 638, 660 (2d Cir. 2015).

Additionally, Plaintiffs' claims of economic injuries are entirely speculative and not alleged with any specificity.  For instance, Plaintiffs appear to claim that they will lose business by losing unvaccinated customers.  Putting aside the fact that unvaccinated patrons may still patronize covered business by utilizing services provided outdoors or virtually, it is also entirely possible that Key to NYC could lead to increased business by drawing people comforted by the

25

vaccine requirement.  Significantly, as set forth above, despite the fact that Key to NYC went into effect over a month ago, Plaintiffs offer no evidence to show that any businesses are at imminent risk of closing due to Key to NYC.

**POINT III**

**THE BALANCE TO HARDSHIPS TIPS IN THE DEFENDANTS' FAVOR**

Finally, Plaintiffs have not—and cannot—show that on balance the equities lie in their favor. Plaintiffs seek to enjoin the City's efforts to eradicate COVID-19, a disease which has led to over 700,000[11] deaths across the country. Such efforts are clearly in the public interest and serve to promote and protect the health of New Yorkers.  Courts have repeatedly found in denying motions to preliminarily enjoin government efforts to stem the spread of COVID-19, that a balancing of the equities and public interest tips in favor of the government.  See Maniscalco, 2021 U.S. Dist. LEXIS 184971, *10-11; Columbus Ale House, 2020 U.S. Dist. LEXIS 191828, *13-14 ("while 'plaintiff bears the very real risk of losing its business, the Governor's interest in combatting COVID-19 is at least equally significant'" (citing League of Indep. Fitness Facilities & Trainers, Incl v. Whitmer, 814 F. App'x 125, 129 (6th Cir. 2020)); Our Wicked Lady, LLC, 2021 U.S. Dist. LEXIS 44505, *18; Hopkins Hawley, LLC, 2021 U.S. Dist. LEXIS 24580, *22-25; Luke's Catering Serv., LLC, 485 F. Supp. 3d at 387.

It is undisputable that the City has a compelling interest in slowing the spread of COVID-19.  See Roman Catholic Diocese, 141 S. Ct. at 67 ("Stemming the spread of COVID-19 is unquestionably a compelling interest."); Ass'n of Jewish Camp Operators, 2020 U.S. Dist. LEXIS 117765, at *46; Murphy v. Lamont, 2020 U.S. Dist. LEXIS 136961 (D. Conn. Aug. 3,

---

[11] https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last accessed on Oct. 1, 2021).

2020). It is critical for New Yorkers to achieve a high level of population immunity to mitigate the transmission of the Delta strain of the virus that is currently causing an increase in new cases; to prevent virus mutation to potentially deadlier or more transmissible strains; to mitigate stress on the healthcare systems, and avoid a return to stricter regulations such as another "lockdown" of non-essential businesses which would result in even greater economic stress on the City and on businesses such as petitioners.  Varma Dec. at ¶ 40-43.  Further, the City's research demonstrates that the majority of unvaccinated City residents would be motivated to get vaccinated in order to return to restaurants and gyms, and that young adults, who have lower rates of vaccination, are frequent patrons of restaurants, gyms, and certain entertainment venues. Id. at ¶¶ 27-31. Vaccination rates in the City have increased since the implantation of Key to NYC Program, suggesting that the program is working. Id. at ¶ 29.   Accordingly, the balancing of the equities tips decidedly in the City's favor.

## CONCLUSION

Plaintiffs' motion for a preliminary injunction should be denied in its entirety, together with such other relief as the Court deems just and proper.

Dated:         New York, New York
               October __, 2021

GEORGIA M. PESTANA
Corporation Counsel of the City of    New York
Attorney for Defendants
100 Church Street
New York, New York 10007

By:   _Kerri A. Devine and Jasmine Paul_ /s/_____
         KERRI A. DEVINE
         JASMINE PAUL

27