# EXHIBIT N

Case 1:21-cv-05060-BMC Document 18-1 Filed 10/08/21 Page 2 of 16 PageID #: 426

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND

---------------------------------------------------------------------X   IAS PART 21

INDEPENDENT RESTAURANT OWNERS
ASSOCIATION RESCUE (I.R.O.A.R.),                     **Present:**
EVOLVE33LLC d/b/a EVOLVE-33,
STATEN ISLAND JUDO JUJITSU,                          **Hon. Lizette Colon, J.S.C.**
DELUCA'S ITALIA RESTAURANT, INC.,
PROJECT VISUAL, INC. d/b/a MAX'S ESCA, and           **DECISION AND ORDER**
ROCCO'S BROOKLYN BAKERA d/b/a
PASTICCERIA ROCCO,                                   **Index No. 85155/2021**

         **Petitioners,**   **Motion No. 001 & 002**

 -against-

BILL DE BLASIO, in his official capacity as
MAYOR of the City of New York, and
THE CITY OF NEW YORK,

         **Respondents.**

---------------------------------------------------------------------X

The following papers numbered 1 to 4 were marked fully submitted on September 3, 2021:

| | Papers Numbered |
|---|---|
| Order to Show Cause annexing a Verified Petition dated August 17, 2021 | 1 |
| Respondent's Affirmation in Opposition prepared by Jay Varma, M.D. dated September 2, 2021, with Exhibits Annexed | 2 |
| Respondent's Memorandum of Law in Opposition | 3 |
| Notice of Petition | 4 |

Petitioners seek an order from this Court permanently enjoining the enforcement of the "regulation" promulgated by the government requiring any entity that operates one or more covered premises [Indoor Entertainment and Recreational Settings, Indoor Food Services, and Indoor Gyms and Fitness Settings] from allowing specified individuals from entering their covered premises without providing "proof of vaccination and identification bearing the same identifying

information as the proof of vaccination" or face a significant fine beginning on September 13,

2021. The Court denies petitioners' application without prejudice.

*What is the Article 78 proceeding and when should it be used?*

Professor Siegel in his treatise *New York Practice* summarizes the use of the Article 78

proceeding succinctly when he said:

> The Article 78 proceeding supersedes the common law writs of
> mandamus, prohibition and certiorari to review, supplying in
> replacement of all three of them a uniform device for challenging
> the **activities of an administrative agency in court.** The
> administrative agency is the major apparatus today for the conduct
> of government, the unit through which regulation reaches down to
> the people on an individual basis (New York Practice, Siegel and
> Connors 6[th] ed. § 557)(emphasis added).

Without belaboring the point, the people may utilize the Article 78 proceeding to check the

government's use of its administrative powers through various agencies before a court. Despite

the arguments raised by petitioners and the responses provided by the government's lawyers

Mayor Bill de Blasio is not an administrative agency, nor are the executive orders he issues

administrative regulations contemplated under Article 78. And while petitioners failed to annex a

copy of Emergency Executive Order No. 225, or any other admissible evidence supporting their

arguments, to their moving papers, requirements made clear by statutory law, regulatory rules, and

the terms of New York City's charter provided for its widespread dissemination to the public—

including this Court.

*What is an Executive Order and what is its function?*

The New York City Charter, like the constitutions governing the actions of the federal and

state governments separates governmental powers across three branches of government—the

Executive, Legislative, and Judicial. In this context petitioners tried to challenge actions taken by

the Executive branch—the mayor. The Executive branch of government may issue directives to

those entities within its authority in the form of executive orders which may have limited or widespread effect and may or may not last beyond the Executive's term in office depending on the prerogatives of the Executive's successors. Those individuals subject to the orders issued by the Executive, generally employees of the Executive branch, must obey orders issued by the Executive because those orders represent the will of the executive branch of government which resides in an individual elected by the people.

While the administration of governmental agencies operated by the Executive branch may reach down and directly affect the people on an individual basis, the government, through the Executive, *may* not usually dictate a course of conduct on the people through fiat—citizens, whether small business owners or residents of the City, are not employees of the Executive branch government.

Those individuals tasked with drafting the framework of governmental power during periods of calm reflection delineated how a civil government should exercise its authority over the people notwithstanding periods of unanticipated emergency short of martial law. Emergency Executive Order No. 225 seems to recognize this reality but moves a step farther when it states unequivocally the following:

> NOW, THEREFORE, pursuant to the powers vested in me by the laws of the State of New York and the City of New York, including but not limited to the New York Executive Law, the New York City Charter and the Administrative Code of the City of New York, and the **common law authority to protect the public in the event of an emergency**... (emphasis added)

This Court recognizes a State's authority encompasses those limited and enumerated powers permitting the government to protect the rights of the people—which *may* include reasonable steps to protect their health and welfare. However, this Court knows of no common

Case 1:21-cv-05000-BMC Document 18-2 Filed 10/08/21 Page 5 of 16 PageID #: 429

law power in New York State granting an individual acting in the capacity as the local Executive branch the "authority" to "protect the public in the event of an emergency."

New York State Executive Law § 24, in effect when the Mayor issued Emergency Executive Order No. 225 permits a local chief executive to issue a proclamation "not to exceed thirty days or until rescinded by the chief executive, whichever occurs first."

The relevant portion of the Executive Law provides illustrative cases of what *may* constitute instances where a "chief executive may promulgate local emergency orders to protect life and property or to bring the emergency situation under control." The statute's language indicates the executive *may* have limited authority to promulgate directives *suspending* local ordinances, regulatory rules, and state laws for a limited period. It also appears that the statute may permit the executive to *proactively* issue orders to establish medical care facilities and to provide public services through executive orders. It does not provide a basis to proactively issue so-called unlimited emergency regulations. The statute provides the following illustrations of permissible emergency actions:

> a. the establishment of a curfew and the prohibition and control of pedestrian and vehicular traffic, except essential emergency vehicles and personnel;
>
> b. the designation of specific zones within which the occupancy and use of buildings and the ingress and egress of vehicles and persons may be prohibited or regulated;
>
> c. the regulation and closing of places of amusement and assembly;
>
> d. the suspension or limitation of the sale, dispensing, use or transportation of alcoholic beverages, firearms, explosives, and flammable materials and liquids;
>
> e. the prohibition and control of the presence of persons on public streets and places;

4

FILED: RICHMOND COUNTY CLERK 09/10/21 Case 1:21-cv-05090-BMC Document 18-12 Filed 10/08/21 Page 6 of 16 PageID #: 430 INDEX NO. 86155/2021

NYSCEF DOC. NO. 13

RECEIVED NYSCEF: 09/10/2021

f. the establishment or designation of emergency shelters, emergency medical shelters, and in consultation with the state commissioner of health, community based care centers;

g. the suspension within any part or all of its territorial limits of any of its local laws, ordinances or regulations, or parts thereof subject to federal and state constitutional, statutory and regulatory limitations, which may prevent, hinder, or delay necessary action in coping with a disaster or recovery therefrom whenever (1) a request has been made pursuant to subdivision seven of this section, or (2) whenever the governor has declared a state disaster emergency pursuant to section twenty-eight of this article. Suspension of any local law, ordinance or regulation pursuant to this paragraph shall be subject to the following standards and limits:

(i) no suspension shall be made for a period in excess of five days, provided, however, that upon reconsideration of all the relevant facts and circumstances, a suspension may be extended for additional periods not to exceed five days each during the pendency of the state of emergency;

(ii) no suspension shall be made which does not safeguard the health and welfare of the public and which is not reasonably necessary to the disaster effort;

(iii) any such suspension order shall specify the local law, ordinance or regulation, or part thereof suspended and the terms and conditions of the suspension;

(iv) the order may provide for such suspension only under particular circumstances, and may provide for the alteration or modification of the requirements of such local law, ordinance or regulation suspended, and may include other terms and conditions;

(v) any such suspension order shall provide for the minimum deviation from the requirements of the local law, ordinance or regulation suspended consistent with the disaster action deemed necessary; and

5

> (vi) when practicable, specialists shall be assigned to
> assist with the related emergency actions to avoid
> adverse effects resulting from such suspension.

The law makes it clear that a local executive *may* declare a localized emergency under the

statutory powers of the state. The New York City Administrative Code defines the instances where

a mayor *may* declare a localized state of emergency within New York City. The relevant portion

of the code reads in its totality:

> Whenever the mayor determines that there has been an act of
> violence or a flagrant and substantial defiance of or resistance to a
> lawful exercise of public authority, and that, partly on account
> thereof, there is reason to believe that there exists a clear and present
> danger of a riot or other general public disorder, widespread
> disobedience of the law, and substantial injury to persons or to
> property, all of which constitutes a threat to public peace or order
> and to the general welfare of the city or part or parts thereof, the
> mayor may declare that a state of emergency exists within the city
> or any part of parts thereof. NYC Admin Code § 3-104

If a mayor exercises the authority to proclaim a state of emergency, it becomes subject to

a time limitation also proscribed by the Administrative Code. The relevant portion of the code

follows in its totality:

> A state of emergency established under the code shall commence
> upon the declaration thereof by the mayor and shall terminate at the
> end of a period of five consecutive days thereafter, unless prior to
> the end of such five day period, the mayor shall either terminate such
> state of emergency or shall declare an additional state of emergency.
> Any such additional state of emergency shall commence and
> determinate as provided in section 3-140 and in this section. NYC
> Admin. Code § 3-107.

The current pandemic status, despite its worldwide impact, does not seem to meet the first

element necessary to declare a state of emergency under the quoted language of New York City's

code ("an act of violence or a flagrant and substantial defiance of or resistance of a lawful exercise

6

Case 1:21-cv-05090-BMC Document 13-42 Filed 10/08/21 Page 8 of 16 PageID #: 432

of public authority…").  The government seems to acknowledge this point in the language it chose

to justify the authority when it issued Emergency Executive Order No. 225:

> The restraints on the Mayor's executive authority does not prevent a government from issuing prescriptive remedies for a health crisis.  The government may act either through the City Council's passage of local ordinances and laws, or similarly through the administrative process. The New York City Charter and New York City Administrative Code provides agencies with procedures for emergency rulemaking.  Emergency procedures exist providing a framework for emergency rulemaking in the Administrative Code which provides:

> i. Emergency procedures.

> 1. Notwithstanding any other provision of this section, an agency may adopt a rule prior to the notice and comment otherwise required by this section if the immediate effectiveness of such rule is necessary to address an imminent threat to health, safety, property or a necessary service. A finding of such imminent threat and the specific reasons for the finding must be made in writing by the agency adopting such rule and shall be approved by the mayor before such rule may be made effective. In the event that an elected official other than the mayor has the authority to promulgate rules, such official may make such findings without prior mayoral approval. The rule and accompanying finding shall be made public forthwith and shall be published in the City Record as soon as practicable. Agencies shall also electronically transmit all emergency rules adopted pursuant to this paragraph to the office of the speaker of the council, the council's office of legislative documents, the corporation counsel, each council member, the chairs of all community boards, the news media and civic organizations, as such term is defined in subdivision b of this section, no later than the date the emergency rules are transmitted to the City Record for publication pursuant to this paragraph.

> 2. A rule adopted on an emergency basis shall not remain in effect for longer than sixty days unless the agency has initiated notice and comment otherwise required by this section within such sixty day period and publishes with such notice a statement that an extension of such rule on an emergency basis is necessary for an additional sixty days to afford an opportunity for notice and comment and to

adopt a final rule as required by this section; provided that no further
such finding of an emergency may be made with respect to the same
or a substantially similar rule.

NYC Admin. Code § 1041

Unlike either legislation or regulation the use of emergency executive powers by the

government eliminates the people's rightful role in government. While the use of an executive

order may be permitted, its use is strictly limited. The purported actions taken in Emergency

Executive Order No. 225 seeking to affect the public health and welfare of the people within New

York City are opaque. Still Emergency Executive Order No. 225 issued by the government

dictates affirmative steps effectively deputizing private individuals to curtail the freedom of

movement and association of their neighbors and patrons or face significant fines. An official

record justifying the government's fiat does not exist. Public testimony from public health care

scholars and practitioners supporting these steps do not exist. The people's representatives are not

on record questioning the decisions, conclusions, and guidance of health care scholars and

practitioners.

What does exist are 11 "whereas" clauses with one stating in particular:

> WHEREAS, a study by Yale University demonstrated that the
> City's vaccination campaign was estimated to have prevented about
> 250,000 COVID-19 cases, 44,000 hospitalizations and 8,300 deaths
> from COVID-19 infection since the start of vaccination through July
> 1, 2021, and the City believes the number of prevented cases,
> hospitalizations and death has risen since then; and that between
> January 1, 2021, and June 15, 2021, over 98% of hospitalizations
> and deaths from COVID-19 infection involved those who were not
> fully vaccinated.

Yet even this single speculative "whereas" clause fails to state with particularity the names

of the authors who prepared the Yale study, when it was released, where it was published, who

Case 1:14-cv-05090-BMC   Document 78-0   Filed 10/08/21   Page 10 of 16 PageID #: 434

funded the research that produced the study, and what informs the City's "beliefs." Government should not and must not operate in such a manner.

The government and by extension the executive derive no inherent power from the common law in New York. An executive order is neither an administrative regulation promulgated under the procedures governing the administrative law, nor is it binding law created under the governmental authority of New York's constitution or the New York City Charter. There exists no authority remotely suggesting that the Mayor of New York City may promulgate permanent administrative rules unilaterally outside the normal and emergency rulemaking process.[1] An executive order represents the prerogative of a single individual, and therefore should be limited in scope and duration—even in the context of an emergency. It therefore appears, but is not argued, that petitioners seek to challenge the improper use of local Executive power and not a regulation promulgated by a New York City administrative agency.[2] This Court lacks the authority to rule on controversies not argued by the litigants, nor is it imbued with the power to divine the intentions of the advocates before it.

*So, an Executive Order is not a law but is it a Constitutional exercise of local governmental power?*

Assuming petitioners brought the proper challenge before this Court, and provided it with evidence in admissible form, and that legislation existed mandating that the people submit to vaccination the Court *could* have ruled that the **state** has the constitutional authority to promulgate legislation mandating the vaccination of its citizens without running afoul of the United States Constitution applicable to the states through the 14th Amendment. Assuming a state law existed requiring citizens submit to vaccination and enabling localities to carry out the law, a locality may

---

[1]     Administrative agencies lack authority to issue permanent emergency regulations even while utilizing an abridged emergency rulemaking process.

[2]     Petitioners assumed during oral argument that an administrative agency issued the "regulation" it challenged.

9

Case 1:21-cv-02662 Document 18-0 Filed 10/08/21 Page 11 of 16 PageID #: 435

promulgate ordinances or regulations designed to lead to compliance with the state's law requiring vaccination. In the same vein a government may then pass legislation or administrative regulations limiting freedoms within the state or locality based on a person's vaccination status. Laws or regulations based on vaccination status *may* not require analysis according to a strict scrutiny standard because they may not involve a fundamental right, protected class, or impermissible motive depending on the language of law or regulation (*Village of Willowbrook v. Olech*, 528 US 562 [2000]).

The government cites the 116-year-old decision issued by the Supreme Court of the United States decision in *Jacobson v. Massachusetts*, 197 US 11 [1905] as precedential. This case involved the actions taken by Massachusetts and the locality of Cambridge in combatting an increase of small pox within the city of Cambridge[3] (*id* at 27). Jacobson refused vaccination and received a five-dollar fine. He then challenged the constitutionality of the regulation and the law enabling the regulation's passage (*id* at 22-24).

The Supreme Court held individual rights are not absolute and may give way to necessary state action. The high court determined that

> [t]he authority of the State to enact this statute [cited at footnote 3]
> is to be referred to what is commonly called the police power – a
> power which the State did not surrender when becoming a member
> of the Union under the Constitution. Although this court has

---

[3]    "The Revised Law of that Commonwealth, c. 75, § 137, provide that the 'board of health of a city or town if, in its opinion, it is necessary for the public health or safety shall require and enforce the vaccination and revaccination of all the inhabitants thereof and shall provide them with the means of free vaccination. Whoever, being over twenty-one years of age and not under guardianship, refuses or neglects to comply with such requirement shall forfeit five dollars.' An exception is made in favor of 'children who present a certificate, signed by a registered physician that they are unfit subjects for vaccination.' § 139"

"Proceeding under the above statutes, the Board of Health of the city of Cambridge, Massachusetts, on the twenty-seventh day of February, 1902, adopted the following regulation: 'Whereas, smallpox has been prevalent to some extent in the city of Cambridge and still continues to increase; and whereas, it is necessary for the speedy extermination of the disease, that all persons not protected by vaccination should be vaccinated; and whereas, in the opinion of the board, the public health and safety require the vaccination or revaccination of all the inhabitants of Cambridge; be it ordered, that all the inhabitants of the city who have not been successfully vaccinated since March, 1, 1897, be vaccinated or revaccinated.'" (*Jacobson v. Massachusetts*, 1905 US LEXIS 1232, ***3-4)

10

refrained from any attempt to define the limits of that power, yet it has distinctly recognized the authority of a State to enact quarantine laws and 'health laws of every description;' indeed, all laws that relate to matters completely within its territory and which do not by their necessary operation affect the people of other States. According to settled principles the police power of a State must be held to embrace, at least, such reasonable regulations established directly by **legislative enactment** as will protect the public health and the public safety... It is equally true that the State may invest local bodies called into existence for purposes of local administration with authority in some appropriate way to safeguard the public health and the public safety. The mode or manner in which those results are to be accomplished is within the discretion of the State subject, of course, so far as Federal power is concerned, only to the condition that no rule prescribed by a State, nor any regulation adopted by a local governmental agency acting under the sanction of state legislation, shall contravene the Constitution of the United States or infringe any right granted or secured by that instrument. A local enactment or regulation, even if based on the **acknowledged power of a State**, must always yield in case of conflict with the exercise by the General Government of any power it possesses under the Constitution, or with any right which that instrument gives or secures... (id. at 25 [emphasis added] [citations omitted]).

Unlike the situation presented to the Supreme Court of the United States in *Jacobsen* New York did not acknowledge its inherent police power in a legislative enactment requiring its citizens submit to a mandatory vaccination for COVID-19. New York provides no legislative mandate requiring people in this state to submit to a COVID-19 vaccine.

Indeed, while both petitioners and the government reference a decision from the Supreme Court of the United States evaluating COVID-19 restrictions in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 US ___ [2020] it remains unclear if its holding would control concerning the Mayor of New York City's edict contained in Emergency Executive Order No. 225.

In *Roman Catholic Diocese of Brooklyn*, the high court analyzed the substance of Executive Order 202.28 issued by Governor Cuomo on May 7, 2020. In its summary of the Governor's Executive Order the high court pointed out that the substance of the edict treated

11

houses of worship differently than other activities operating in the same areas (id.)  The analysis

of the actions taken by the Governor of New York and the Mayor of New York City requires

resolving certain subtle nuances concerning the executive powers each individual holds or held.

The New York State legislature amended the New York State Executive Law in March

2020 granting the **governor** alone with additional emergency executive powers to take affirmative

steps generally seen as legislative in nature.  The since repealed statute granted the following

additional powers to the governor

> [t]he governor, by executive order, [to] issue any directive during a
> state of disaster emergency declared in the following instances: fire,
> flood, earthquake, hurricane, tornado, high water, landslide,
> mudslide, wind, storm, wave action, volcanic activity, epidemic,
> disease outbreak, air contamination, terrorism, cyber event, blight,
> drought, infestation explosion, radiological accident, nuclear
> chemical, biological, or bacteriological release, water
> contamination, bridge failure or bridge collapse. Any such directive
> must be necessary to cope with the disaster and may provide for
> procedures reasonably necessary to enforce such directive. (New
> York State Senate Bill No. S7919 (2020)

It is unclear whether *Roman Catholic Diocese of Brooklyn* challenged the governor's power to

issue an executive order with such a sweeping scope because the legislature passed a law

transferring its constitutional authority to legislate to the executive branch.  The legislation passed

by New York's legislature did not imbue local executive branches throughout New York State

with any additional powers—including the Mayor of New York City.  Similarly, the New York

City Council did not pass any authority conveying unilateral regulatory authority onto the Mayor

of New York City.

The explicit language contained in Emergency Executive Order No. 225 states that

mandating the vaccine provides a basis for the locales selected.  The provision reads:

> WHEREAS, 56% of City residents are fully vaccinated and 62%
> have received at least one dose, and mandating vaccinations at the

12

types of establishments that residents frequent will incentivize vaccinations, increasing the City's vaccination rates and saving lives...

While the burden never shifts to the government to justify its actions due to the lack of evidence submitted by petitioners, the City did include the affirmation of Jay Verma, MD where he offers an explanation mandating or "motivating[4]" individuals to comply with the edict issued by the government. The affirmation includes stellar academic and professional experiences which allows Dr. Varma to speak on matters of public health with authority and to advise New York City's leaders. Indeed Dr. Varma avers that he acts as "Mayor Bill de Blasio's Senior Advisor for Public Health." The accolades, stellar academic credentials, and a position of authority within the government does not obviate the requirement to follow procedures when either compelling the people to take an action, or suspending the people's ability to act a certain way.

A court may not rule on the Constitutionality of a governmental action based on speculation. A court may not seek to divine the "true" meaning or intentions of the petitioners before it, based on a tortured reading of their written application. Moreover, it is unclear whether an executive order, absent any state statute enabling the action taken, or a transfer of regulatory authority to the executive by City Council, proscribing that private individuals "take action" under the penalty of monetary fines even requires Constitutional scrutiny at all.

*Where does this leave us?*

The Court hears the grievances of the people and fully understands that legal arguments exist to challenge the actions taken against individuals by the government. They were not made here. Waving a purportedly "leaked" e-mail demonstrating selective enforcement of a

---

[4]     The government references "motivating" individuals 18-39 to vaccinate in its Memorandum of Law at pages 5 and 9. Webster's Dictionary defines "motivate" as to provide with a motive: IMPEL. Webster's Dictionary defines "impel" to urge or drive forward or on by or as if by the exertion of strong moral pressure.

13

Case 1:21-cv-05090-BMC Document 18-14 Filed 10/08/21 Page 15 of 16 PageID #: 439

governmental action during a court proceeding or after arguments on the courthouse steps without either submitting it as evidence in admissible form or questioning whether the government had the authority to dictate such an action defines grandstanding. The people, through their advocates, must place justiciable issues before a court to allow it to rule. The people, through their elected representatives must introduce legislation and resolution in their respective houses to express their displeasure. A court may not create arguments on the people's behalf against government action, and it may not investigate their grievances, submit their evidence in admissible form in support of their arguments, and take steps to castigate a co-equal branch of government based on its feelings alone.

The Mayor of New York City's actions during this pandemic raise many questions. This includes, but in no way is limited to, whether the mayor of a local government may exercise a state's unacknowledged police power to motivate, compel, coerce, or whatever other adjective may exist, a population to receive a vaccination not mandated by its state government. Yet it, like so many other arguments, was not argued here.

In the United States the people are sovereign. The government does not convey rights to the people, but instead it is the people who convey power to the government. The government exists to protect the rights of all people, even if that means curtailing some of the freedoms we enjoy assuming the people act through the proper organs of government. It is procedure and its attendant processes that separates a functioning democratic republic from an autocracy that merely pays lip service to democratic principles and process. When a single individual attempts to impose a vision of morality by obviating the democratic process on a populace a sorry state of affairs exists.

Accordingly, it is hereby:

14

Case 1:21-cv-05090-NMC Document 18-04 Filed 10/08/21 Page 16 of 16 PageID #: 440

ORDERED, the Article 78 proceeding commenced by petitioners is denied and dismissed

in its entirety without prejudice.

ENTER,

_____
Hon. Lizette Colon, J.S.C.[5]

DATED: September 10, 2021

---

[5]     The court thanks Richmond County's Law Department and the Chief Court Attorney, Jeffrey M. Alfano, Esq., for providing legal research on this decision and order.

15